# Illinois Official Reports

## Appellate Court

*Ammons v. Canadian National Ry. Co.*, 2018 IL App (1st) 172648

| | |
|---|---|
| Appellate Court Caption | MELVIN AMMONS, Plaintiff and Counterdefendant-Appellee, v. CANADIAN NATIONAL RAILWAY COMPANY, a Foreign Corporation, and WISCONSIN CENTRAL, LTD., a Foreign Corporation, Individually and as a Subsidiary of Canadian National Railway Company, Defendants (Wisconsin Central, Ltd., Defendant and Counterplaintiff-Appellant).–DARRIN RILEY, Plaintiff and Counterdefendant-Appellee, v. WISCONSIN CENTRAL, LTD., Defendant and Counterplaintiff-Appellant. |
| District & No. | First District, First Division<br>Docket Nos. 1-17-2648, 1-17-3205 cons. |
| Filed | December 17, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 15-L-1324, 16-L-4680; the Hon. John H. Ehrlich, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Kevin M. Forde and Joanne R. Driscoll, of Forde Law Offices LLP, and Catherine Basque Weiler and Kevin V. Boyle, of Swanson Martin & Bell, both of Chicago, for appellant.<br><br>Leslie J. Rosen, of Leslie J. Rosen Attorney at Law, P.C., Scott C. Sands, of Sands & Associates, and George Brugess, of Cogan & Power, P.C., all of Chicago, for appellees. |

Panel

JUSTICE GRIFFIN delivered the judgment of the court, with opinion.
Presiding Justice Mikva concurred in the judgment and opinion.
Justice Pierce dissented, with opinion.

**OPINION**

¶ 1    If there is a train crash and the railway employee involved files a personal injury claim against his employer for negligence, can the railway-employer file a counterclaim for negligence for the property damage caused in the crash? That is the question posed by this appeal.

¶ 2    The trial court held that, no, the employer could not pursue such a counterclaim. The trial court dismissed the counterclaims filed by the railway, finding that they are barred. A finding was entered under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) that made the order appealable. We agree that the answer to the question posed above is no, and we affirm.

¶ 3                                    I. BACKGROUND

¶ 4    Plaintiffs, Melvin Ammons and Darrin Riley, filed these lawsuits against defendant, Wisconsin Central, Ltd. (Wisconsin Central), for injuries they sustained during the course of their employment. Riley was the locomotive engineer and Ammons was the conductor when the train they were operating struck another train that was stopped ahead on the same track. Both Ammons and Riley filed lawsuits alleging that the railway-defendant was negligent and violated several rules and regulations that led to their injuries. The lawsuits were consolidated below and, for purposes of this appeal, the issues are the same as to both plaintiffs.

¶ 5    Defendant Wisconsin Central responded to the lawsuit by denying liability and also by filing counterclaims against both employees. The counterclaims are for money damages to redress property damage caused by the accident and for contribution in tort from the plaintiffs for one another's injuries. In its counterclaims, Wisconsin Central alleges that plaintiffs were negligent; that they violated rules and operating practices and that their failure to follow mandated speed limits or apply the emergency brakes before the collision caused significant damage to its property. Both trains involved in the collision were damaged as was the railroad track, and environmental clean-up and remediation was required.

¶ 6    Plaintiffs filed a motion to dismiss the counterclaims arguing that such claims are prohibited under sections 55 and 60 of the Federal Employers Liability Act (FELA) (45 U.S.C. § 51 *et seq.* (2012)). Section 55 of the FELA voids "[a]ny contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from liability" under the FELA. *Id.* § 55. Section 60 voids "[a]ny contract, rule, regulation, or device whatsoever, the purpose, intent, or effect of which shall be to prevent employees of any common carrier from furnishing voluntarily information to a person in interest as to the facts incident to the injury or death of any employee." *Id.* § 60.

¶ 7    Plaintiffs argued in their motion to dismiss that the counterclaims asserted by defendant were a "device" that defendant was using to exempt itself from liability for their on-the-job injuries and that the counterclaims were being used coercively—to dissuade injured workers from asserting their FELA claims and providing information about the accident. The trial court

dismissed the counterclaims. Defendant appeals pursuant to the trial court's ruling under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) that there was no just reason for delaying appeal of its order.

¶ 8                                                      II. ANALYSIS

¶ 9        This appeal presents a pure question of law. Can a railroad counterclaim for property damage in an employee's personal injury suit where both parties' alleged harm arises out of the same occurrence and both parties are alleged to have been negligent? The trial court answered in the negative and dismissed the counterclaims.

¶ 10       Plaintiffs' motion to dismiss the counterclaims was presented as a motion under section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2016)). Defendant argues that it is really a section 2-619 motion to dismiss because the FELA sections on which plaintiffs rely raise "an affirmative matter that seeks to avoid the legal effect of or defeat the claims" (citing *id.* § 2-619(a)(9)). Our supreme court has stated that raising the defense that a claim is barred by a prevailing statute should be done under section 2-619. See *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 54. We review the dismissal of a claim under either section 2-615 or section 2-619 *de novo*. *Jones v. Brown-Marino*, 2017 IL App (1st) 152852, ¶ 18. Defendant does not raise any serious concern over which section of the Code was applied and is not prejudiced.

¶ 11       The case is governed by FELA (45 U.S.C. § 51 *et seq.* (2012)). The FELA provides injured railroad workers with their exclusive remedy against their employers for injuries resulting from their employers' negligence. *New York Central R.R. Co. v. Winfield*, 244 U.S. 147, 151-52 (1917). The FELA was enacted as a response to the special needs of railroad workers who are exposed daily to the risks inherent in railroad work and are helpless to provide adequately for their own safety. *Sinkler v. Missouri Pacific R.R. Co.*, 356 U.S. 326, 329 (1958). The purpose of the FELA is to provide fair compensation for injured railroad workers by imposing liability upon railroads for injuries to their employees resulting from the railroads' negligence. *Wilson v. CSX Transportation, Inc.*, 83 F.3d 742, 745 (6th Cir. 1996).

¶ 12       Both parties have pointed us to compelling case law that supports their respective positions on appeal. Both parties likewise admit, at least tacitly, that there is decisional law from other jurisdictions that supports the opposing outcome. See Russell J. Davis, *Employers' Liability Acts: Counterclaims*, 11 Fed. Proc., L. Ed. § 30:48 (Nov. 2018 Update). The issue has apparently never been decided by an Illinois court—at least no such decisions have been reported.

¶ 13       Sections 55 and 60 of the FELA both serve to void certain contracts, rules, regulations, or devices that might be used defensively by a railway in FELA litigation. See 45 U.S.C. §§ 55, 60 (2012). Section 55 bars the use of those instruments insofar as they allow the railway to exempt itself from liability, and section 60 bars their use for preventing employees from furnishing information relating to the injury or death of another employee. *Id.* The determination of this appeal turns on whether the counterclaims for property damage asserted by the railway-defendant are "devices" as set out in the Act and whether their interposition enables defendant to exempt itself from liability. If the counterclaim is such a device, then it is barred as void by section 55 of the FELA.

¶ 14       One of the first cases to address the issue and shape the discourse on section 55 is *Cavanaugh v. Western Maryland Ry. Co.*, 729 F.2d 289 (4th Cir. 1984). In *Cavanaugh*, the

court began its analysis by recognizing the common law principle that employers have a right of action against employees for property damages arising out of an employee's negligence occurring within the scope of employment. *Id.* at 290-91. The court went on to explain that nothing in the FELA explicitly forecloses the railways' right to redress for property damage caused by a negligent employee. *Id.* at 291.

¶ 15    In addressing section 55 of the FELA (referred to therein as "Section 5"), the court stated that

> "[n]either by its express language nor by its legislative history does Section 5 suggest in any way that the 'device' at which the proscription of the Section was directed was intended to include a counterclaim to recover for the railroad's own losses incurred in connection with the accident out of which the injured employee's claim arose." *Id.* at 292.

The court further stated that a counterclaim by a railway to recoup money for its own property damages is "plainly not an 'exempt[ion] … from any liability' and thus is not a 'device' within the contemplation of Congress." *Id.* Thus, the court held, railways may file counterclaims for negligent damage to their property in a personal injury case brought by an employee. *Id.* at 294-95. One judge dissented. See *id.* at 295-97 (Hall, J., dissenting).

¶ 16    After the decision in *Cavanaugh*, the United States Courts of Appeals for the First Circuit, Eighth Circuit, and Fifth Circuit followed suit. See *Sprague v. Boston & Maine Corp.*, 769 F.2d 26 (1st Cir. 1985); *Nordgren v. Burlington Northern R.R. Co.*, 101 F.3d 1246 (8th Cir. 1996); *Withhart v. Otto Candies, L.L.C.*, 431 F.3d 840 (5th Cir. 2005). The cases do not really build on *Cavanaugh* with any significant original reasoning but adopt its interpretation of the statute. The basic analytical underpinning of those three cases and *Cavanaugh* is that counterclaims for property damage do not fit within the meaning of "device" under section 55 of the FELA because they do not serve to exempt the railways from liability. Instead, the railway may still be liable to the injured employee for its own negligence, but the employee must answer for his negligence resulting in property damage as well. Those courts held that contracts and devices prohibited under section 55 are those that are "creative agreements or arrangements the railroad might come up with to exempt itself from liability." *Nordgren*, 101 F.3d at 1251. To interpret section 55 as the plaintiffs suggested in those cases and as plaintiff suggests here, those courts reasoned, would be to absolutely immunize railway employees for their own negligence. See, *e.g.*, *Sprague*, 769 F.2d at 29.

¶ 17    However, the reasoning and holdings espoused in those cases do not represent a clear consensus. The dissenting judge in *Cavanaugh* made the compelling argument that "the language of the FELA supports the conclusion that Congress intended to prohibit counterclaims, such as the one filed by the railroad here, because the filing of such counterclaims will unfairly coerce or intimidate the injured employee from filing and pursuing his FELA action." *Cavanaugh*, 729 F.2d at 295 (Hall, J., dissenting). In the view of the dissenting judge, "the railroads' counterclaim is a 'device' calculated to intimidate and exert economic pressure upon [the employee], to curtail and chill his rights, and ultimately to exempt the railroads from liability under the FELA." *Id.* at 296. The dissenting judge in *Nordgren* took the same position. *Nordgren*, 101 F.3d at 1253 (McMillian, J., dissenting). Heavily relying on William P. Murphy, *Sidetracking the FELA: The Railroads' Property Damage Claims*, 69 Minn. L. Rev. 349 (1985), Judge McMillian would have ruled that "whether filed as counterclaims or brought as separate actions, [property damage claims

brought by the railway] are preempted by the FELA's statutory language and are fundamentally incompatible with its remedial purpose." *Nordgren*, 101 F.3d at 1258 (McMillian, J., dissenting).

¶ 18    Other courts confronted with the question have found that the result advocated for by the dissenting judges in *Cavanaugh* and *Nordgren* represents the correct and more pragmatic approach to interpreting the FELA. Just a year after *Cavanaugh* was decided, the United States Court for the District of Colorado broke from the interpretation employed in *Cavanaugh*. The district court held that "where an injured railroad worker *** asserts personal injury or wrongful death claims under the FELA, a railroad defendant may not counterclaim for damages to its property caused in the occurrence which gave rise to the employee's injuries or death." *Yoch v. Burlington Northern R.R. Co.*, 608 F. Supp. 597, 598 (D. Colo. 1985). Other courts have interpreted sections 55 and 60 of the FELA in the same way. See *In re National Maintenance & Repair, Inc.*, No. 09-0676-DRH, 2010 WL 456758 (S.D. Ill. Feb. 3, 2010), *aff'd sub nom. Deering v. National Maintenance & Repair, Inc.*, 627 F.3d 1039, 1047 (7th Cir. 2010); *Blanchard v. Union Pacific R.R. Co.*, No. 15-0689-DRH, 2016 WL 411019 (S.D. Ill. Feb. 2, 2016); *Stack v. Chicago, Milwaukee, St. Paul & Pacific R.R. Co.*, 615 P.2d 457 (Wash. 1980) (*en banc*).

¶ 19    The basic analytical underpinning of the cases that take exception to allowing counterclaims by a railway for property damage in personal injury cases is that the counterclaims are retaliatory devices calculated to intimidate and exert economic pressure on injured employees, curtail their rights when asserting injury claims and supplying information, and ultimately, exempt the railways from liability under the FELA. See *Blanchard*, 2016 WL 411019, at *3. Being that the FELA is a remedial statute for the benefit of employees, concern has been expressed by the courts rejecting the interpretation used in *Cavanaugh* that "[t]o allow the railroads' counterclaim to proceed would pervert the letter and spirit of the FELA and would destroy the FELA as a viable remedy for injured railroad workers." See *Cavanaugh*, 729 F.2d at 296 (Hall, J., dissenting).

¶ 20    Defendant argues that we are obligated to follow *Cavanaugh* and the other circuits' decisions on the issue because they are federal interpretations of federal law that are "controlling," citing *Wilson v. Norfolk & Western Ry. Co.*, 187 Ill. 2d 369, 374 (1999). With respect to the interpretation of federal law, we are bound only by the decisions of the United States Supreme Court and the Illinois Supreme Court, not by the decisions of the lower federal courts. *Lakeview Loan Servicing, LLC v. Pendleton*, 2015 IL App (1st) 143114, ¶ 33; *Travelers Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 302 (2001). As to the laws of the United States, state courts are coordinate to lower federal courts and possess the authority, absent a provision for exclusive federal jurisdiction, to render binding judicial decisions that rest on their own interpretations of federal law. See *Arizonans for Official English v. Arizona*, 520 U.S. 43, 58 n.11 (1997). To be sure, federal courts' interpretations of federal laws are entitled to deference, and uniformity of decision is an important consideration when state courts are interpreting federal statutes. *State Bank of Cherry v. CGB Enterprises, Inc.*, 2013 IL 113836, ¶ 35. But on the issue presented here, there is already not "uniformity of decision" among federal courts.

¶ 21    In our judgment, prohibiting railways from interposing counterclaims for property damage in response to an employee's personal injury suit is the correct interpretation of sections 55 and 60 of the FELA and is the interpretation most consistent with the FELA's overarching goal of

providing a remedy to employees injured while participating in this dangerous occupation. Allowing counterclaims for property damage suffered by the railway as a response to a personal injury action defeats the remedial purpose of the FELA. The property damage counterclaims are, in practice, liability-limiting or liability-exempting devices inconsistent with the FELA. We find the logic and analysis of the dissents in *Cavanaugh* and *Nordgren* and the *Deering* court's discussion of the issue to be most persuasive.

¶ 22 The FELA is meant to impose liability upon railroads for injuries to their employees resulting from the railroads' negligence because of the special needs of railroad workers who are daily exposed to the risks inherent in railroad work and are helpless to provide adequately for their own safety. *Cavanaugh*, 729 F.2d at 295-96 (Hall, J., dissenting). If a railway employee has an accident operating the company's machinery that is no doubt exorbitantly expensive, the costs will frequently be more than the cost of the harm suffered by the employee. See *Deering*, 627 F.3d at 1044-45. The nullification of a personal injury claim would thus obtain in such cases, even where the injured employee proves that negligence on the part of the railway caused his injury.

¶ 23 It is clear that if defendant was trying to accomplish the same ends as desired here, but by contract, its action would be prohibited. Defendant makes no persuasive case as to why it should be able to do so with a counterclaim in tort instead. If the railway required employees to sign a contract saying that any personal injury award would be cancelled or set off by the costs incurred by the railway in the occurrence leading to the injury, it would be void. Congress meant to prohibit *the conduct* of railways exempting themselves from liability for personal injuries. Allowing railways to do by tort what Congress expressly forbids them from doing by contract or other means is an illogical interpretation and result.

¶ 24 The statute casts a broad net for the type of instruments it prohibits—"any contract, rule, regulation, or device whatsoever." See *Stack*, 615 P.2d at 460 (a broad interpretation of "device" is "supported both by the purpose of the act and by case authority"); *Deering*, 627 F.3d at 1044 (statute's tacking of "whatsoever" to "any device" is a clue that "device" is intended as a catch-all). A "device" is "a plan, procedure, technique" (Merriam-Webster's Collegiate Dictionary 317 (10th ed. 1998)), "a method that is used to produce a particular effect" (Cambridge Dictionary, https://dictionary.cambridge.org/dictionary/english/device (last visited Dec. 5, 2018)). Counterclaims like those interposed here are legal "devices" that "enable [a] common carrier to exempt itself from liability" in their employees' personal injury actions. A counterclaim for property damage caused in the same occurrence that caused an employee's injury is a setoff or its functional equivalent, regardless of what the railway calls it. It is a legal device that enables a railway to limit or exempt itself from liability to its employee for its own negligence. And it is apparent that, in practice, railways use counterclaims for property damage as setoffs against personal injury claims. See *Cavanaugh*, 729 F.2d at 295 n.1 (Hall, J., dissenting); *Deering*, 627 F.3d 1043. The counterclaims are "creative arrangements" that allow railways to circumvent FELA liability.

¶ 25 The parties argue about what level of influence the Court of Appeals for the Seventh Circuit's decision in *Deering* should have on this case. In *Deering*, the court specifically stated that the issue presented in this case was not before it and that the court would "leave for a future day" whether property damage claims by an employer should be permitted in an employee's personal injury FELA case. *Deering*, 627 F.3d at 1048. Nevertheless, the clear statement by the court in *Deering* is a judicial *dictum*. A "judicial *dictum*" is "an expression of

opinion upon a point in a case argued by counsel and deliberately passed upon by the court, though not essential to the disposition of the cause." *Cates v. Cates*, 156 Ill. 2d 76, 80 (1993). The *Deering* court undertook a wide-ranging analysis of the issue and persuasively made the case that section 55 of the FELA should be interpreted to bar counterclaims such as the one interposed here. *Deering*, 627 F.3d at 1045-46. While the court was mindful that the case before it did not require that the question be answered, the court deliberately delved into the issue, went through a significant analysis of it, and made no secret what the determination would and should be. See *id.* at 1044.

¶ 26    While the courts following *Cavanaugh* have expressed apprehension that a decision barring counterclaims would immunize employees from their own negligence, the result that those decisions support can effectively immunize railways from *their negligence* toward their own employees. The railways are in a far better position to bear the collective burden of loss from their employees' negligence than the employees are to bear the personal burden of loss from the railway's negligence. The employee already can recover only those damages attributable to the railway's negligence, and comparative negligence is available to the railway as a defense in mitigation. See *Wilson*, 187 Ill. 2d at 373. The FELA was enacted to protect railway employees against oppressive maneuvers that prevent them from getting redress for workplace injuries. See *Villa v. Burlington Northern & Santa Fe Ry. Co.*, 397 F.3d 1041, 1045 (8th Cir. 2005) (FELA is a broad remedial statute and is intended by Congress to protect railroad employees by doing away with certain defenses). The FELA is the exclusive remedy for railway employees against their employer, but that exclusive remedy is subject to essentially being abrogated by a property damage counterclaim. The broad remedial endeavors of the FELA demand that a plaintiff's personal injury claim should not be subject to easy defeat.

¶ 27    Section 55 voids any device that "enable[s]" a railway to exempt itself from FELA liability. 45 U.S.C. § 55 (2012). That means that an exemption from liability by way of counterclaim does not have to be the actual result in every case. Property damage counterclaims plainly *can be used* to enable the railroad to eliminate an employee's personal injury claim and extinguish a railway's FELA liability. And common sense and pragmatic business practices tell us not only that the counterclaims *can be used* to exempt the railway from FELA liability, but that the counterclaims *are used* for that purpose and maybe solely for that purpose.

¶ 28    Injured railway workers cannot pursue any right of redress in a workers' compensation action or in a common law negligence action—the FELA is all they have. *Sutherland v. Norfolk Southern Ry. Co.*, 356 Ill. App. 3d 620, 622 (2005) (as a railroad employee, the plaintiff was covered by the FELA, which provides the sole remedy for workplace injuries to the exclusion of the Workers' Compensation Act). Allowing a negligent railway to, for practical purposes, vanquish any liability to an injured employee by offsetting the claim with the cost of its damaged equipment is an unacceptable result at odds with the remedial purpose of the FELA—to fairly compensate employees injured by a negligent employer.

¶ 29    We also find persuasive to our holding the fact that a railway-employer's interposition of counterclaims in a personal injury action has the effect of preventing and discouraging employees from cooperating in injury and death investigations. Section 60 of the FELA prohibits the use of legal devices for just that purpose. As the dissent in *Cavanaugh* noted,

"As long as a railroad is permitted to hold the threat of a counterclaim for property damage over the heads of those employees who have the misfortune to be involved in a railroad accident, those witnesses, whether injured or not, may well be reluctant to participate during the initial investigation by the railroad, at hearings held by the National Transportation Safety Board, or at the trial of an FELA action maintained by a fellow employee." *Cavanaugh*, 729 F.2d at 296 (Hall, J., dissenting).

See also *In re National Maintenance & Repair, Inc.*, 2010 WL 456758, at *3 (allowing counterclaims for property damage impermissibly chills the filing of personal injury claims and the voluntary furnishing of information regarding such claims).

¶ 30     The allowance of counterclaims for property damage not only intimidates potential plaintiffs from filing personal injury claims but also serves as a warning to other employees that might not have been injured, but that might be accused of being negligent, not to participate. The threat of retaliatory suits and potential silencing of employees is what sections 55 and 60 of FELA were enacted to protect against. *Stack*, 615 P.2d at 460 (" 'the crew's testimony will be affected because they will be reluctant to testify candidly when their own pocketbooks are in jeopardy' "). The counterclaim asserted in this case is prohibited by sections 55 and 60 of the FELA and was properly dismissed.

¶ 31                                                    III. CONCLUSION

¶ 32     Accordingly, we affirm.

¶ 33     Affirmed.

¶ 34     JUSTICE PIERCE, dissenting:

¶ 35     As the majority notes, this case presents an issue of first impression in this state: whether under the FELA a railroad may counterclaim for property damage in a railroad employee's personal injury suit where both parties' claims sound in negligence. The reasoning in *Cavanaugh*, which was adopted in *Sprauge*, *Nordgren*, and again in *Withhart*, is sound. In my view, those are the better-reasoned decisions, and I would follow those cases in holding that a railroad's counterclaim for property damages is not a "device" used to "exempt" a railroad from "liability" under the FELA. To conclude otherwise ignores that defendant's counterclaim does not seek to exempt defendant from liability for plaintiffs' alleged injuries. "Exempt" means "[f]ree or released from a duty or liability to which others are held." Black's Law Dictionary 593 (7th ed. 1999). Defendant's counterclaim for property damages does not seek to free or release defendant from any duty or liability to plaintiffs for their personal injuries. I respectfully dissent.

¶ 36     The majority concludes that there is no "clear consensus" on this issue among the courts that have addressed it and elects to follow an interpretation of the FELA that has not been adopted by any federal circuit court of appeals. The four federal circuit courts that have addressed this issue have spoken with a single voice: a railroad's counterclaim for property damages in an employee's negligence suit for personal injury is not a "device" within the meaning of sections 5 and 10 of the FELA. The majority here adopts an expansive view of the term "device" that is not well-grounded in the text of the FELA or a public policy that favors an injured party's right to seek damages for another's negligence.

¶ 37    In *Cavanaugh*, the Fifth Circuit Court of Appeals scoffed at the notion that the FELA should be read to effectively immunize a negligent employee from liability for the employee's negligent conduct that injures their employer. *Cavanaugh*, 729 F.2d at 291; see also *Sprague*, 769 F.2d at 29 (agreeing with *Cavanaugh* that denying the employer the right to seek recovery would "clothe the employee" with absolute immunity). The court of appeals in *Cavanaugh* examined section 5 of the FELA and observed

> "Neither by its express language nor by its legislative history does Section 5 suggest in any way that the 'device' at which the proscription of the Section was directed was intended to include a counterclaim to recover for the railroad's own losses incurred in connection with the accident out of which the injured employee's claim arose." *Cavanaugh*, 729 F.2d at 292.

*Cavanaugh* went on to state that the term "device" found within section 5 is a "contract, rule, regulation, or device whatsoever, *the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter*." (Emphasis in original and internal quotation marks omitted.) *Id.* I agree with *Cavanaugh*'s sensible conclusion that a "counterclaim by the railroad for its own damages is plainly not an 'exempt[ion] … from any liability' and is thus not a 'device' within the contemplation of Congress." *Id.* Furthermore, *Cavanaugh* found no support in the legislative history for the notion that employees should be immunized from property damage claims but instead found an intent to void the railroads' use of unilateral exemptions of liability. *Id.* at 292-93.

¶ 38    Likewise, in *Nordgren*, the Eighth Circuit Court of Appeals observed that "the phrase 'any device whatsoever' is informed by the terms preceding it—'contract,' 'rule,' and 'regulation.' All of these terms refer to the legal instruments railroads used prior to the enactment of FELA to exempt themselves from liability." *Nordgren*, 101 F.3d at 1250-51. *Nordgren* found that the term " 'any device whatsoever' refers only to any other creative agreement or arrangements the railroad might come up with to exempt itself from liability" (*id.* at 1251) but did not "encompass a railroad's common-law based counterclaim for property damages" (*id.*). Furthermore, *Nordgren* observed that "the law at the time FELA was enacted did not preclude railroads from recovering property damages" and that Congress "never purported to affect the railroads' recovery." *Id.* at 1253.

¶ 39    Here, the majority reaches the opposite result relying on cases that adopt a "more pragmatic approach to interpreting the FELA." *Supra* ¶ 18. But the majority's concerns that a railroad will use property damage counterclaims as "retaliatory devices calculated to intimidate and exert economic pressure on injured employees, curtail their rights when asserting injury claims and supplying information, and ultimately, exempt the railways from liability under the FELA" (*supra* ¶ 19), is speculative, since there is no evidence that railroads possess such an animus and is premised on a misunderstanding of how defendant's counterclaim affects its potential liability for plaintiffs' injuries, which is zero. Furthermore, we should not assume that Congress implicitly intended to limit the railroads' right to seek property damages where railroads had a right to do so before the FELA and the plain language of the FELA only addresses the imposition of unilateral exemptions of liability.

¶ 40    The majority opinion firmly closes the door on the ability of defendant or any other employer governed by the FELA to recover damages against an employee for the employee's negligent conduct. It would produce the absurd result that an uninjured employee that negligently causes property damage would be liable for damages but an injured employee that

negligently causes damages would be immune from a property damage claim. Because I do not believe that to be a proper interpretation of the FELA, I would follow the decisions from the First, Fourth, Fifth, and Eighth Circuits, the only federal circuits to consider the issue, as controlling law on this issue. *Cavanaugh* and *Nordgren* are controlling decisions within Fourth and Eighth Circuits notwithstanding the dissent filed in each of those cases, and the divergent federal district court decisions are not controlling law within those circuits. I would reverse the judgment of the circuit court and permit defendant to pursue its counterclaims for property damages.