DAVIDSON PIPE SUPPLY COMPANY, INC. *vs.* RAYMOND
B. JOHNSON.

Plymouth. May 13, 1982. — October 19, 1982.

Present: ARMSTRONG, ROSE, & GREANEY, JJ.

*Damages,* Contract, Nominal. *Contract,* Employment. *Practice, Civil,*
Summary judgment.

In an action by a corporation against a former salesman alleging that the
salesman breached the terms of his employment with the corporation
by making sales for another company while he was employed by the
plaintiff, the judge, allowing the defendant's motion for summary
judgment, erred in ruling that the plaintiff's damages were barred due
to uncertainty, that there was no competition between the plaintiff
and the second company, and that lack of provable damages defeated
the plaintiff's cause of action. [520-524]

At the trial of a counterclaim by the defendant in a civil action, alleging
that the plaintiff had represented its action against the defendant to
others in a way which damaged the defendant's reputation and inter-
fered with his job opportunities in violation of G. L. c. 93A, there was
sufficient evidence to warrant the judge's conclusion that the defend-
ant had failed to meet his burden of proof. [524-525]

CIVIL ACTION commenced in the Superior Court on July 5,
1977.

A motion for summary judgment was allowed by *Chmie-
linski, J.,* and a counterclaim was heard by *Byron, J.*

*Joel Lewin* for the plaintiff.

*Albert E. Grady* (*Charles E. Berg* with him) for the de-
fendant.

ROSE, J.  The plaintiff, Davidson Pipe Supply Company,
Inc., appeals from a judgment of the Superior Court follow-
ing the grant of the defendant's motion for summary judg-
ment, and the defendant appeals from a judgment of dis-
missal of his counterclaim after trial before another
Superior Court judge.

The plaintiff's claim against the defendant alleges a breach of the defendant's terms of employment. The defendant was hired in 1963 by the plaintiff to perform the duties of a salesman for the plaintiff's products. There was no written contract of employment. During some of the time that the defendant worked for the plaintiff, the defendant also sold products of Skyline Industries, Inc. (Skyline), and, from 1972 through 1976, the defendant received $141,805 from Skyline as well as $138,408 from the plaintiff.[1] The plaintiff alleged in its complaint that the terms of the defendant's employment obligated the defendant to work full time and exclusively for the plaintiff and that Skyline was the plaintiff's competitor at the time the defendant was selling the products of both the plaintiff and Skyline. The defendant, in submitting a motion for summary judgment, argued that he was not obligated to work exclusively for the plaintiff, that Skyline and the plaintiff were not competitors, and that the plaintiff's alleged damages were speculative. In support of his motion he submitted an affidavit and portions of the transcript of the deposition of the chairman of the board of the plaintiff, Peter Davidson.[2] On the issue of the defendant's terms of employment, the plaintiff submitted in response to the defendant's motion an affidavit by Peter Davidson. On the issues of Skyline's competition with the plaintiff and the plaintiff's damages, the plaintiff made no response. The defendant's motion for summary judgment was allowed, and the plaintiff's motion for reconsideration was denied.

The defendant alleged in his counterclaim, inter alia, that the plaintiff had represented its lawsuit to others in a way which interfered with the defendant's business reputation and job opportunities in violation of G. L. c. 93A. Sub-

---

[1] These were the amounts determined by the trial judge in his findings on the defendant's counterclaim, based on the defendant's income tax returns.

[2] Peter Davidson is the son of Phillip Davidson, now deceased, who was chairman of the board of the plaintiff during the time of the defendant's employment by the plaintiff.

sequently, during the trial on the counterclaim, the defendant also alleged that the plaintiff had violated G. L. c. 93. The trial judge found for the plaintiff and dismissed the counterclaim.

*The summary judgment.* In allowing the defendant's motion for summary judgment, the motion judge made three rulings:

(1) Damages as measured by a portion of the defendant's salary from the plaintiff for the time he spent selling Skyline's products are speculative "since there is no way of readily computing what portion of his hours were diverted or what additional profit the plaintiff would have earned but for the defendant's alleged breach";

(2) Damages as measured by Skyline's payments to the defendant for the time during which the defendant worked for the plaintiff but was performing services for Skyline are unavailable because the defendant did not act in competition with the plaintiff; and

(3) Because these were the only damages specifically asked for by the plaintiff and they "may not properly be measured," "the plaintiff has no cognizable cause of action."

The last of these rulings will be examined first.

If the plaintiff cannot show that it is entitled to any damages, the defendant would still be liable for nominal damages if the plaintiff can prove that the defendant committed a breach of an employment agreement. Restatement (Second) of Agency § 401 comment b (1957). Once a breach is established, the plaintiff is entitled "to at least nominal damages in an action at law . . . regardless of his ability to prove substantial damages." *Rombola* v. *Cosindas,* 351 Mass. 382, 384 (1966). See, e.g., *Damiano* v. *National Grange Mut. Liab. Co.,* 316 Mass. 626, 629 (1944); *King Features Syndicate, Inc.* v. *Cape Cod Bdcst. Co.,* 317 Mass. 652, 655 (1945); *Nathan* v. *Tremont Storage Warehouse, Inc.,* 328 Mass. 168, 171 (1951); *Page* v. *New England Tel.*

*& Tel. Co.*, 383 Mass. 250, 251 (1981).[3] Since the motion judge ruled that "[t]he parties . . . dispute whether there was a contract by the defendant not to engage in any sales activity or other employment other than for the plaintiff during his period of employment, implied from the company's custom and practice with its salesmen," there was a factual issue to be resolved concerning the terms of the employment contract, and that factual issue precluded summary judgment. *Bedford Heating & Air Conditioning Co. v. Milano*, 6 Mass. App. Ct. 898 (1978). Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974).

Since Mass.R.Civ.P. 56(d), 365 Mass. 824 (1974), permits partial summary judgment, it is necessary to reach the motion judge's rulings on the availability of damages. The motion judge ruled that the damages to which the plaintiff may be entitled depend in part on whether the defendant acted in competition with the plaintiff and found that the defendant's sales of Skyline products were of "items that were not manufactured by (or in competition with items manufactured by) the plaintiff during this period."[4] Lack of competition between the plaintiff and Skyline would not prevent the plaintiff from proving damages for breach of contract stemming from any failure of the defendant to

---

[3] The cases cited by the defendant in support of a contrary view either did not speak to this issue or were suits in equity. "[E]quity pays no attention to nominal damages." *Strong* v. *Merchants Mut. Ins. Co.*, 2 Mass. App. Ct. 142, 150 (1974), *S.C.*, 366 Mass. 751 (1975).

[4] Massachusetts cases have held that the relation of employer and employee, absent an agreement, gives rise to no fiduciary relationship, except insofar as the employee has a duty not to disclose confidential information obtained during the course of his employment. See, e.g., *American Stay Co.* v. *Delaney*, 211 Mass. 229 (1912); *Jet Spray Cooler, Inc.* v. *Crampton*, 361 Mass. 835, 839-840 (1972). An employee, however, may be liable to an employer for damages resulting from breach of contract if the employee used time which should have been devoted to the employer to work for another. *American Stay Co., supra* at 233.

There were no explicit allegations that a confidential relationship had been violated, although the plaintiff's complaint did allege that the defendant "had been working in a manner directly contrary to the plaintiff's interests."

work according to the terms of his employment.[5] However, the presence of such competition could have a bearing on the plaintiff's damages, so it is necessary to consider the motion judge's ruling on this particular issue of competition.[6]

In evaluating the materials presented to the motion judge, the inferences which may be drawn from the facts alleged are to be viewed "in the light most favorable to . . . the parties opposing summary judgment." *Salem Bldg. Supply Co.* v. *J.B.L. Constr. Co.*, 10 Mass. App. Ct. 360, 365 (1980). The evidence submitted by the defendant in support of his allegation that he did not sell products in competition with the plaintiff consisted of portions of a deposition of the chairman of the board of the plaintiff, Peter Davidson. These deposition selections, when viewed as admissions by the plaintiff,[7] do not show that there was no competition between the plaintiff and Skyline. Davidson's deposition is clear in stating that the plaintiff did not sell the same products as Skyline, but this does not settle the question whether it and Skyline competed for the same buyers

---

[5] "If defective or partial performance is rendered, the loss in value caused by the breach is equal to the difference between the value that the performance would have had if there had been no breach and the value of such performance as was actually rendered." Restatement (Second) of Contracts § 347 comment b (1979).

[6] For a discussion of a different but related issue of covenants not to compete following employment, see 1974 Ann. Survey Mass. Law § 7.1.

[7] We shall assume here, without deciding, that the plaintiff would be bound by uncontradicted admissions made by Peter Davidson, who was not the chairman of the board during the defendant's employment. See *Brunswick Corp.* v. *Vineberg*, 370 F.2d 605, 611 (5th Cir. 1967) (depositions of the plaintiff's corporate officers who apparently had no personal knowledge of the details of the suit do not support the defendant's motion for summary judgment). See also *Dome Realty Co.* v. *Cohen*, 290 Mass. 36, 39 (1935) ("It is the party offering the answers as evidence who is bound by them, and then only if they are uncontradicted by other evidence"); *McMahon* v. *M & D Builders, Inc.*, 360 Mass. 54, 61 (1971) ("If the [plaintiff's] answers [to interrogatories] are offered in evidence by the defendant, they may bind the defendant if they are uncontradicted, but they will not bind the [plaintiff]"), though both of these cases were decided before Massachusetts adopted the current rule 56.

or markets.[8]  In portions of the deposition Davidson appears uncertain of Skyline's competitive status.[9]  In other portions, however, Davidson indicates that the defendant did cause the plaintiff to lose some business with its customers.[10] Instead of showing no "genuine issue as to any material fact," Mass.R.Civ.P. 56(e), 365 Mass. 825 (1974), the deposition excerpts, viewed in the light most favorable to the plaintiff, indicated that there was a dispute about the nature of the competition between the plaintiff and Skyline. "[S]ummary judgment is not a substitute for the trial of disputed fact issues."  10 Wright & Miller, Federal Practice and Procedure § 2712, at 379 (1973).

Because "[r]ule 56(e) provides that once a motion is made and supported by affidavits and other supplementary material the opposing party may not simply rest on his plead-

---

[8] The trial judge found in the trial on the defendant's counterclaim that Skyline's H piles (or beams) and the plaintiff's pipe piles served the same function, and that a buyer would use one or the other, but not both, for foundation piling.  The plaintiff did not ask for reconsideration of the allowance of the defendant's motion for summary judgment during or after this trial.  Final judgments dismissing the plaintiff's claim and the defendant's counterclaim were entered on the same day.

[9] When asked, "Would a potential buyer have an interest in buying Davidson Pipe products along with H pile and sheet pile?," Davidson responded, "I'm not really sure how to answer that question.  I would assume that a potential purchaser of H pile and sheet pile would want to buy from whoever can give him the best deal.  We don't happen to handle that product.  We don't handle a lot of other things."  When confronted with the question, "So that it wouldn't be a situation where Davidson Pipe had a product and he would be causing the sale of that product to be with a competitor?," Davidson responded, "That's not necessarily so. It might be and it might not be."

[10] When asked whether the defendant caused the plaintiff to lose any customers, Davidson responded, "I don't think we've lost any of the customers but we've lost some business to these customers."  When asked whether Skyline was a competitor at the time of the deposition, he replied, "Yes."  In another response Davidson referred to Skyline as a "semi-competitor."  Although these answers possibly could be explained by the fact that Skyline began selling the same products as the plaintiff after the defendant was no longer employed by the plaintiff, they stand in the way of the defendant's attempt to carry his burden of proof. Any lack of clarity in these answers due to the fact that they were excerpts from surrounding material cannot help the defendant, who selected the excerpts.

ings or general denials, he must 'set forth *specific facts*' . . . showing that there is a genuine, triable issue," *Community Natl. Bank* v. *Dawes*, 369 Mass. 550, 554 (1976), the plaintiff followed an unwise path in not responding to the defendant's motion on the issues of competition and damages. See 6 Moore's Federal Practice par. 56.23, at 56-1390 (2d ed. 1982). Nonetheless, "[i]f the moving party fails to shoulder his burden his motion should be denied, even though the opposing party has presented no evidentiary materials in opposition, and has not presented any [rule] 56(f) affidavit." *Ibid.* See Wright & Miller, *supra* § 2739, at 717-719. Because the defendant's materials were insufficient to carry his burden of showing an absence of a factual dispute, the burden does not shift to the plaintiff so as to require the plaintiff to "set forth specific facts" in opposition to the motion. Mass.R.Civ.P. 56(e). See Wright & Miller, *supra* § 2727, at 535-536.

The defendant also failed to present any evidence to show that the plaintiff's damages are barred by the requirement of certainty. Although the plaintiff may indeed have difficulty in proving damages with sufficient certainty, "[i]t is settled that mere uncertainty in assessing the amount of damages should not jeopardize an injured party's right to recover as long as those damages are the certain result of the wrongdoing." *McKenna* v. *Begin*, 5 Mass. App. Ct. 304, 311 (1977). See *Dalton* v. *Demos Bros. Gen. Contractors, Inc.*, 334 Mass. 377, 378-379 (1956); *BBF, Inc.* v. *Germanium Power Devices Corp.*, 13 Mass. App. Ct. 166, 177 (1982).

Thus, the motion judge erred in ruling that the plaintiff's damages are barred due to uncertainty, that there was no competition between the plaintiff and Skyline, and that lack of provable damages defeats the plaintiff's cause of action.

*The counterclaim.* The trial judge, in dismissing the defendant's counterclaim, found that the defendant did not meet his burden of proof to show:

a. The plaintiff caused the Internal Revenue Service to audit the defendant's tax returns;

b. The plaintiff was responsible for chilling the relationship between the defendant and Philipps Brothers Division of Englehard Minerals and Chemicals Corporation;

c. The plaintiff caused deprivation of job opportunities to the defendant; or

d. The plaintiff caused damage to the defendant's "reputation and ability to function at arm's length with others."

Since these findings were not erroneous, it is not necessary to rule whether contrary findings would have stated a cause of action under G. L. c. 93A or G. L. c. 93.

In reviewing the findings of a trial court in actions tried without a jury, an appellate court may not reverse "unless the facts on which the conclusion was based are clearly erroneous" or unless "the findings or conclusions are tainted by an error of law." *New England Canteen Serv., Inc.* v. *Ashley,* 372 Mass. 671, 674 (1977). Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974). See *Puma* v. *Gordon,* 9 Mass. App. Ct. 489, 490 (1980).

The defendant expresses disagreement with the trial judge's findings. But there is sufficient evidence in the record to support them. The trial judge is "in the best position to determine weight and credibility of the evidence." *Oberg* v. *Burke,* 345 Mass. 596, 598 (1963). Mass.R.Civ.P. 52 (a). See *Puma* v. *Gordon,* 9 Mass. App. Ct. at 492 n.3. The defendant also argues that the trial judge erred in excluding evidence probative of the defendant's damages. The record does not show that the trial judge excluded such evidence except where he properly sustained objections to questions which were leading or asked without proper foundation.

The order allowing the defendant's motion for summary judgment is reversed, as is the judgment entered thereon. The judgment dismissing the defendant's counterclaim is affirmed.

*So ordered.*