Paul SPRAGUE, Plaintiff, Appellant,

v.

BOSTON AND MAINE CORPORATION, Defendant, Appellee.

Paul SPRAGUE, Plaintiff, Appellee,

v.

BOSTON AND MAINE CORP, Defendant, Appellant.

Nos. 84–1791, 84–1914, 84–2024 and 84–2025.

United States Court of Appeals, First Circuit.

Argued June 7, 1985.

Decided Aug. 1, 1985.

James C. Bridgman, Boston, Mass., with whom Irving H. Sheff, Boston, Mass., was on brief for Paul Sprague.

James F. Kavanaugh, Jr., Boston, Mass., with whom Thomas D. Burns, David M. O'Connor and Burns & Levinson, Boston, Mass., were on brief for Boston and Maine Corp.

Before CAMPBELL, Chief Judge, RUBIN * and BREYER, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge.

A railroad engineer sued his employer under the Federal Employers' Liability Act (FELA) for injuries suffered when the locomotive he was operating collided with a train. The railroad counterclaimed for damages to the vehicles involved in the accident, raising a question new to this circuit: whether the FELA rescinded the common law rule that permits an employer to sue his employee for damage to the employer's property. We conclude that the FELA did not have such sweeping impact. Finding that the district judge did not abuse his discretion in ruling on this or on the employee's motion for a new trial, we affirm the district court's entry of judgment for the plaintiff on the jury verdict. We reverse the district court's decision to grant the plaintiff a judgment notwithstanding the verdict on the railroad's counterclaim, however, and reinstate the jury's verdict.

## I.

Paul Sprague, a railroad engineer, was injured when the locomotive he operated collided with a train consist located at the Vermont White River Junction railroad yard in May 1979. As a result of the accident, Sprague sustained a cerebral concussion and was disabled for several months. The collision also caused substantial damages to two locomotives and one boxcar owned by Boston & Maine Corpora-

tion, as well as to two boxcars owned by other carriers.

Sprague filed suit against Boston & Maine Corporation alleging violations of both the Federal Employers' Liability Act [1] and the Safety Appliance Act.[2] The railroad counterclaimed on the issue of property damages resulting from Sprague's alleged negligence in causing the accident. The district court bifurcated the trials on the complaint and the counterclaim.

The jury returned a verdict of $300,000 in favor of Sprague, finding that Sprague's negligence contributed to the accident to the extent of fifty percent. The district court denied motions filed by both parties for a new trial on the liability aspect of the case, but granted the railroad's motion for a new trial solely on the issue of the amount of Sprague's damages. The new jury awarded damages to Sprague in the amount of $10,000. The district court reduced the jury's verdict by one-half to reflect the original jury's finding that the accident was caused partly by Sprague's own negligence and entered judgment for Sprague for $5,000. The court denied Sprague's subsequent motion for additur, or in the alternative, a new trial.

The jury awarded the railroad $25,000 on its counterclaim. The district court, however, entered a judgment for Sprague notwithstanding the verdict. Although the trial judge did not state any grounds for his ruling in his formal order, he explained orally that his decision was based on the railroad's failure to submit sufficient evidence of its damages to support the jury's verdict.

## II.

Sprague's appeal centers on the district court's decisions to deny his motions for a new trial and to grant the railroad's motion for a new trial to determine the amount of damages he had suffered. His contentions face the considerable obstacle posed by the rule that motions for a new trial are ad-

* Of the Fifth Circuit, sitting by designation.

1. 45 U.S.C. §§ 51–60.

2. 45 U.S.C. §§ 1–23.

dressed to the sound discretion of the district court and will be reversed only for abuse of that discretion.[3] The trial judge is afforded broad latitude to review jury awards that are asserted to be either excessive[4] or inadequate,[5] for he has both seen the witnesses and heard the testimony and is in the best position to determine whether the verdict is against the great weight of the evidence. The trial judge is given similarly broad power to limit the new trial to the issue of damages if liability has, in his opinion, been competently determined by the jury.[6]

■ Nothing in the record suggests that the trial judge abused his discretion in ruling on any of these motions. The issue of damages was so distinct and separable from the question of liability that allowing a second jury to determine only the amount of damages wrought no injustice on Sprague.[7] Indeed, it saved him the necessity of again proving the railroad's liability. We have no doubt that, had the new jury returned an even greater verdict Sprague would not have complained, and not much greater doubt that, had the court ordered a new trial of all issues and the second jury found the railroad not liable, he would be asserting error on the part of the trial court. Moreover, the record supports the district court's conclusion that "[t]he damages awarded by the jury were excessive and the amount may have been the result of confusion, at least in part."

■ Sprague also argues that the district court erred in finding the Safety Appliance Act inapplicable. This issue was submitted to the jury in a special question that read: "Was the railroad causally at fault by reason of failure to furnish a locomotive in proper condition and safe to operate?" The jury answered this question in the negative. Because Sprague has not challenged the district court's instruction on this issue, the only question before us is whether there was sufficient evidence to warrant the entry of a judgment notwithstanding the verdict or an allowance of a new trial. "It is only in a very unusual case that an appellate court would be justified in concluding that an abuse of discretion was committed by the trial judge in refusing to grant a new trial on this ground."[8] Because Sprague has failed to demonstrate that this case presents such an unusual situation, we affirm the district court's decision not to set aside the jury's conclusion on this issue.

### III.

■ Sprague argues that the railroad's counterclaim for property damage against a FELA plaintiff is not actionable and should have been dismissed by the district court. This contention is premised on the notion that, by enacting the FELA, Congress impliedly rescinded an employer's common law right to sue its employees for property damage. Although there is sup-

3.  *McDonough Power Equip., Inc. v. Greenwood,* 464 U.S. 548, ——, 104 S.Ct. 845, 850, 78 L.Ed.2d 663, 671 (1984); *Cazzola v. Codman & Shurtleff, Inc.,* 751 F.2d 53, 54 (1st Cir.1984); *Austin v. Unarco Indus., Inc.,* 705 F.2d 1, 18 (1st Cir.), *cert. denied,* 463 U.S. 1247, 104 S.Ct. 34, 77 L.Ed.2d 1454 (1983).

4.  *Rivera v. Rederi A/B Nordstjernan,* 456 F.2d 970, 975 (1st Cir.), *cert. denied,* 409 U.S. 876, 93 S.Ct. 124, 34 L.Ed.2d 128 (1972); *Boston & M.R.R. v. Talbert,* 360 F.2d 286, 291 (1st Cir. 1966). *See generally* 11 C. Wright & A. Miller, Federal Practice and Procedure § 2807 (1973).

5.  *Shipman v. Central Gulf Lines, Inc.,* 709 F.2d 383, 387 (5th Cir.1983); *Porterfield v. Burlington Northern, Inc.,* 534 F.2d 142, 146 (9th Cir.1976); *see Stafford v. Perini Corp.,* 475 F.2d 507, 512

(1st Cir.1973). *See generally* 6A Moore's Federal Practice ¶ 59.08[8] (2d ed. 1984).

6.  *England v. Gulf Western Mfg. Co.,* 728 F.2d 1026, 1029 (8th Cir.1984); *Stanton By Brooks v. Astra Pharmaceutical Prods.,* 718 F.2d 553, 576 (3d Cir.1983); *see Gasoline Prods. Co. v. Champlin Refining Co.,* 283 U.S. 494, 499–500, 51 S.Ct. 513, 515, 75 L.Ed. 1188, 1191 (1931).

7.  *Gasoline Prods. Co. v. Champlin Refining Co.,* 283 U.S. at 500, 51 S.Ct. at 515, 75 L.Ed. at 1191.

8.  *Sears v. Pauly,* 261 F.2d 304, 309 (1st Cir. 1958); *see Valm v. Hercules Fish Prods., Inc.,* 701 F.2d 235, 237 (1st Cir.1983); *see also* 11 C. Wright & A. Miller, Federal Practice and Procedure § 2819 (1973).

port for this analysis,[9] we find the reasoning of the Fourth Circuit in *Cavanaugh v. Western Maryland Railway Co.*[10] to be more persuasive.

In *Cavanaugh,* the Fourth Circuit examined both the legislative history and the policy rationale behind FELA and concluded that the Act did not abrogate an employer's common law right of action against his negligent employee. The court reasoned that to deny the employer the right to seek recovery would clothe the employee with "absolute immunity for any liability for his negligence both in this action and in any other action begun after the judgment in the present action."[11] We agree with this analysis and note that the majority of other courts that have considered this question express the same view.[12]

■ The district judge found, however, that although the railroad presented an actionable counterclaim, there was insufficient evidence to support the jury's verdict in favor of the railroad and granted a judgment N.O.V. for Sprague. Boston & Maine Corporation contends that the district court erred in making this determination. We employ the same standard in reviewing the judge's decision on the motion as the trial court uses in passing on the motion: judgment N.O.V. is proper only when, without weighing the credibility of the witnesses, there can be but one reasonable conclusion as to the proper judgment.[13]

The railroad's counterclaim was premised on the damage done to its property as a result of Sprague's negligence in causing the accident. Massachusetts law[14] measures property damage in tort by the difference between the fair market value of the property before it was damaged and its value after the harm,[15] and the estimated cost of repairs is usually sufficient evidence of this amount.[16] The requirement that the cost of repairs not exceed the reduction in value occasioned by the casualty is designed to prevent a claimant from recovering more than his real economic damage as he would if, for example, an auto worth $3,000 were a total loss and the cost of repairs were $10,000. In such a case, the victim should be made whole but he should not obtain an economic gain by recovering what repairs would have cost. In the usual case, the estimated cost of repairs constitutes sufficient evidence of the decline in fair market value to support an award in the amount of the repair estimate. Uncertainty as to the exact amount of damages does not preclude the jury from determining damages "to some extent on 'estimate and judgment, sometimes upon meager evidence.'"[17]

**9.** *Stack v. Chicago, M., St. P. & P.R.R.,* 94 Wash.2d 155, 615 P.2d 457 (1980); *see also Yoch v. Burlington N.R.R.,* 608 F.Supp. 597 (D.Colo. 1985); *Shields v. Consolidated Rail Corp.,* 530 F.Supp. 400 (S.D.N.Y.1981).

**10.** 729 F.2d 289 (4th Cir.), *cert. denied,* — U.S. ——, 105 S.Ct. 222, 83 L.Ed.2d 151 (1984).

**11.** *Id.* at 291.

**12.** *See Consolidated Rail Corp. v. Dobin, Adm'r.,* Case No. 82–2539 (E.D.Pa.1981); *Key v. Kentucky & I. Terminal R.R.,* Case No. C–78–0313–L(A) (W.D.Ky.1979); *Cook v. St. Louis-San Francisco R.R.,* 75 F.R.D. 619 (W.D.Okla.1976).

**13.** *United States v. Articles of Drugs: 5,906 Boxes,* 745 F.2d 105, 133 (1st Cir.1984); *Rios v. Empresas Lineas Maritimas Argentinas,* 575 F.2d 986, 990 (1st Cir.1978); *see* 5A Moore's Federal Practice ¶ 50.07[2] (2d ed. 1985).

**14.** *Rimer v. Rockwell Int'l Corp.,* 739 F.2d 1125, 1129 (6th Cir.1984); *Moran v. Johns-Manville Sales Corp.,* 691 F.2d 811, 813 (6th Cir.1982).

**15.** *Medford Hous. Auth. v. Marinucci Bros. & Co.,* 354 Mass. 699, 703–04, 241 N.E.2d 834, 837 (1968).

**16.** *See, e.g., id.* 354 Mass. at 703–04, 241 N.E.2d at 837; *Colangeli v. Construction Serv. Co.,* 353 Mass. 527, 530, 233 N.E.2d 192, 194 (1968); *Proulx v. Basbanes,* 354 Mass. 559, 561–562, 238 N.E.2d 531, 533 (1968); *Carter v. Empire Mut. Ins. Co.,* 6 Mass.App. 114, 122–124, 374 N.E.2d 585, 591–92 (1978).

**17.** *Wing v. Durkee,* 10 Mass.App. 924, 412 N.E.2d 910, 911 (1980) quoting *Piper v. Childs,* 290 Mass. 560, 563, 195 N.E. 763, 764 (1935); *see also Colangeli v. Construction Serv. Co.,* 353 Mass. at 529–30, 233 N.E.2d at 194; *Dalton v. Demos Bros. Gen. Contractors,* 334 Mass. 377, 378–79, 135 N.E.2d 646, 646 (1956); *Davidson Pipe Supply Co. v. Johnson,* 14 Mass.App. 518, 524–525, 440 N.E.2d 1194, 1198 (1982); *McKenna v. Begin,* 5 Mass.App. 304, 310–312, 362 N.E.2d 548, 553 (1977).

The railroad submitted evidence to the jury showing the extent of physical damage the locomotives and boxcars sustained in the accident and, in addition, expert testimony concerning the estimated cost of repairing those vehicles. The jury was thus able to use its common sense and experience to "conclude that there was damage in at least some stated amount." [18] On the evidence presented in this case, the jury was justified in assuming that the decline in the value of the locomotives and boxcars was no less than the cost of repairing them. Given that there was sufficient evidence upon which the jury could properly find a verdict for the railroad, the district court erred in granting Sprague a judgment N.O.V.

For these reasons, the judgment of the district court entered for Sprague for $5,000 is AFFIRMED. The district court's entry of a judgment N.O.V. for Sprague on the railroad's counterclaim is REVERSED, and the jury's verdict on that counterclaim is REINSTATED.

**18.** *Colangeli,* 353 Mass. at 530, 233 N.E.2d at 194.