# Illinois Official Reports

## Supreme Court

---

**Ammons v. Canadian National Ry. Co., 2019 IL 124454**

---

| | |
|---|---|
| Caption in Supreme Court: | MELVIN AMMONS *et al.*, Appellees, v. CANADIAN NATIONAL RAILWAY COMPANY *et al.* (Wisconsin Central, Ltd., Appellant). |
| Docket No. | 124454 |
| Filed | December 19, 2019 |
| Modified upon denial of rehearing | January 27, 2020 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. John H. Ehrlich, Judge, presiding. |
| Judgment | Judgments reversed. Cause remanded. |
| Counsel on Appeal | Kevin M. Forde and Joanne R. Driscoll, of Forde Law Offices LLP, and Catherine Basque Weiler and Kevin V. Boyle, of Swanson Martin & Bell, both of Chicago, for appellant. |
| | Leslie J. Rosen, of Leslie J. Rosen Attorney at Law, P.C., Scott C. Sands, of Sands & Associates, and George Brugess, of Cogan & Power, P.C., all of Chicago, for appellees. |

Peter F. Higgins, of Illinois Trial Lawyers Association, of Chicago, *amicus curiae*.

Robert E. Harrington III, of Harrington, Thompson, Acker & Harrington, Ltd., of Chicago, Lawrence M. Mann, of Alper & Mann, of Bethesda, Maryland, and Cortney S. LeNeave, and Richard L. Carlson, both of Wayzata, Minnesota, for *amicus curiae* Academy of Rail Labor Attorneys.

| Justices | JUSTICE GARMAN delivered the judgment of the court, with opinion. |
|---|---|
| | Chief Justice Burke and Justices Thomas, Karmeier, and Theis concurred in the judgment and opinion. |
| | Justice Kilbride dissented, with opinion, joined by Justice Neville. |
| | Justice Kilbride dissented upon denial of rehearing, with opinion, joined by Justice Neville. |

**OPINION**

¶ 1    The Federal Employers' Liability Act (FELA) (45 U.S.C. § 51 *et seq.* (2012)) provides the exclusive remedy for railroad employees to recover damages for injuries suffered due to their employer's negligence. This appeal asks whether counterclaims filed by a railroad employer against its allegedly negligent employees are prohibited by sections 55 and 60 of the FELA. We hold that they are not prohibited. We reverse the appellate court's decision and remand to the circuit court for further proceedings.

¶ 2                              BACKGROUND

¶ 3    Plaintiffs Melvin Ammons and Darrin Riley filed separate lawsuits under the FELA against defendant Wisconsin Central, Ltd. (Wisconsin Central), for injuries they sustained during their employment with the railroad in December 2014. Ammons was employed as a conductor, and Riley was the locomotive engineer when the train they were operating struck another train that was stationary on the same track. In their lawsuits, both plaintiffs alleged Wisconsin Central was negligent in violating various rules and regulations, which resulted in their injuries. As the lawsuits concerned the same incident and contained similar issues, the Cook County circuit court consolidated the cases.

¶ 4    Wisconsin Central denied liability and filed counterclaims against both plaintiffs. In the counterclaims, Wisconsin Central alleged that plaintiffs failed to exercise ordinary care and acted in an otherwise careless and negligent manner. As a result of its employees' negligence, Wisconsin Central claimed multiple locomotives, railroad cars, railroad track, and railroad track structures sustained significant damage, which caused it to spend significant amounts of

money to repair, perform environmental cleanup and remediation, and incur other incidental and consequential damages. Wisconsin Central sought damages in excess of $1 million.

¶ 5 Plaintiffs filed a motion to dismiss the counterclaims pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2016)), arguing Wisconsin Central's counterclaims violated sections 55 and 60 of the FELA. Section 55 of the FELA prohibits "[a]ny contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from liability." 45 U.S.C. § 55 (2012). Section 60 of the FELA prohibits "[a]ny contract, rule, regulation, or device whatsoever, the purpose, intent, or effect of which shall be to prevent employees of any common carrier from furnishing voluntarily information to a person in interest as to the facts incident to the injury or death of any employee." *Id.* § 60.

¶ 6 Plaintiffs argued that Wisconsin Central's counterclaims constituted a "device" designed to exempt itself from liability to pay damages to injured employees, to deter railroad employees from providing information regarding injury or death of an employee, or both. As the counterclaims had the potential to negate any compensation plaintiffs received for their injuries, plaintiffs argued allowing the counterclaims would have a chilling effect on the filing of injury claims under the FELA.

¶ 7 The circuit court granted plaintiffs' motion to dismiss, finding a state common-law counterclaim brought by a common carrier employer against an employee constituted a "device" under the FELA because a successful counterclaim could reduce or effectively eliminate a damages award to the employee.

¶ 8 The appellate court affirmed the circuit court's dismissal. 2018 IL App (1st) 172648. Noting several federal cases have found counterclaims for property damage do not fall within the meaning of "device" under section 55 of the FELA, the appellate court found a lack of a clear consensus and stated cases to the contrary conclude "the counterclaims are retaliatory devices calculated to intimidate and exert economic pressure on injured employees, curtail their rights when asserting injury claims and supplying information, and ultimately, exempt the railways from liability under the FELA." *Id.* ¶ 19. The appellate court concluded that prohibiting counterclaims by railroads against their employees is the correct interpretation of sections 55 and 60 of the FELA "and is the interpretation most consistent with the FELA's overarching goal of providing a remedy to employees injured while participating in this dangerous occupation." *Id.* ¶ 21.

¶ 9 Justice Pierce dissented, believing "a railroad's counterclaim for property damages is not a 'device' used to 'exempt' a railroad from 'liability' under the FELA." *Id.* ¶ 35 (Pierce, J., dissenting). The dissent expressed concern that the majority's decision "would produce the absurd result that an uninjured employee that negligently causes property damage would be liable for damages but an injured employee that negligently causes damages would be immune from a property damage claim." *Id.* ¶ 40.

¶ 10 Wisconsin Central petitioned this court for leave to appeal, and we allowed that petition. Ill. S. Ct. R. 315 (eff. July 1, 2018). The Illinois Trial Lawyers Association and the Academy of Rail Labor Attorneys sought, and we granted, leave to file *amicus* briefs. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 11                      ANALYSIS

## I. Standard of Review

The appellate court affirmed the circuit court's order dismissing Wisconsin Central's counterclaims pursuant to plaintiffs' motion under section 2-615 of the Code. Although the motion to dismiss would have been more appropriately filed under section 2-619 of the Code (735 ILCS 5/2-619 (West 2016)) because plaintiffs' motion sought to raise an affirmative matter seeking to avoid the legal effect of or defeat the claim, our review of a dismissal under either section is *de novo*. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31.

## II. Whether Wisconsin Central's Counterclaims Against Plaintiffs Are Prohibited

### A. The FELA

The FELA provides, in relevant part, that

> "[e]very common carrier by railroad while engaging in commerce *** shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce *** for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier." 45 U.S.C. § 51 (2012).

Congress enacted the FELA in 1908 in response to the rising toll of serious injuries and death to railroad workers. *Norfolk Southern Ry. Co. v. Sorrell*, 549 U.S. 158, 165 (2007). To further the humanitarian purposes of the FELA, Congress eliminated several of the common-law defenses that had previously barred railroad workers from prevailing on their injury claims. *Consolidated R. Corp. v. Gottshall*, 512 U.S. 532, 542 (1994). For example, Congress "abolished the fellow servant rule, rejected the doctrine of contributory negligence in favor of that of comparative negligence, and prohibited employers from exempting themselves from FELA through contract; a 1939 amendment abolished the assumption of risk defense." *Id.* at 542-43.

### B. Federal Court Interpretation of Federal Statutes

This case necessarily requires us to interpret the language of sections 55 and 60 of the FELA and consider the decisions of federal courts analyzing these sections.

> "When interpreting federal statutes, we look to the decision of the United States Supreme Court and federal circuit and district courts. [Citation.] United States Supreme Court interpretation of federal law is clearly binding on this court. However, in the absence of a United States Supreme Court decision, the weight this court gives to federal circuit and district court interpretations of federal law depends on factors such as uniformity of law and the soundness of the decisions." *State Bank of Cherry v. CGB Enterprises, Inc.*, 2013 IL 113836, ¶ 33.

Therefore, "if the lower federal courts are uniform on their interpretation of a federal statute, this court, in the interest of preserving unity, will give *considerable weight* to those courts' interpretations of federal law and find them to be highly persuasive." (Emphasis in original.) *Id.* ¶ 35. If, however, the federal courts are split, we may elect to follow those decisions we believe are better reasoned. *Id.*

¶ 19    Having determined the standard for assigning weight to federal court decisions interpreting federal law, we now apply that standard in our interpretation of the language found in sections 55 and 60 of the FELA. As the United States Supreme Court has not addressed this issue, we turn to the lower federal courts to guide our interpretation of the statute.

¶ 20    In arguing that sections 55 and 60 of the FELA do not bar counterclaims brought by railroads asserting their common-law right to recover property damages against FELA plaintiffs, Wisconsin Central relies on *Cavanaugh v. Western Maryland Ry. Co.*, 729 F.2d 289 (4th Cir. 1984), *Sprague v. Boston & Maine Corp.*, 769 F.2d 26 (1st Cir. 1985), *Nordgren v. Burlington Northern R.R. Co.*, 101 F.3d 1246 (8th Cir. 1996), and *Withhart v. Otto Candies, L.L.C.*, 431 F.3d 840 (5th Cir. 2005). In arguing that the counterclaims by Wisconsin Central are prohibited because they would defeat the broad remedial purpose of the FELA, plaintiffs rely in large part on *Deering v. National Maintenance & Repair, Inc.*, 627 F.3d 1039 (7th Cir. 2010). We will look at each case in turn.

¶ 21    In *Cavanaugh*, 729 F.2d at 290, the plaintiff train engineer was injured when his train collided head-on with another train. The plaintiff filed an FELA action to recover for personal injuries, and the railroad defendants counterclaimed under state law for $1.7 million in property damages sustained by them in the same accident. *Id.* After the plaintiff moved to dismiss the counterclaim, the district court granted the motion, finding the counterclaim would violate sections 55 and 60 and be contrary to the public policy reflected in the FELA. *Id.*

¶ 22    On appeal, the Fourth Circuit began its analysis by recognizing the "well accepted common law principle that a master or employer has a right of action against his employee for property damages suffered by him 'arising out of ordinary acts of negligence committed within the scope of [his] employment' by the offending employee." *Id.* (quoting *Stack v. Chicago, Milwaukee, St. Paul & Pacific R.R. Co.*, 615 P.2d 457, 459 (Wash. 1980) (*en banc*)).

¶ 23    The plaintiff argued that the defendants' counterclaim constituted a "device" in violation of section 55 and to allow it would deprive the plaintiff of his right to recovery under the FELA and chill justifiable claims. *Id.* at 292. The Fourth Circuit found the argument unpersuasive. *Id.*

¶ 24    In looking at section 55, the court of appeals stated that neither the express language of the statute nor the legislative history suggested the word "device" was meant to include a railroad's counterclaim to recover losses in connection with the accident in which the employee was injured. *Id.* The court found the critical word in the definition of "device" was "exemption," as it was only when the contract or device qualified as an exemption from liability that it became void under section 55. *Id.* As a counterclaim was not an exemption of liability, it was not a device within the meaning of the statute. *Id.*

¶ 25    The court of appeals also considered the plaintiff's argument that sections 55 and 60 evince a legislative purpose to prohibit counterclaims by the defendant railroads in FELA actions "because the filing of such counterclaims will unfairly coerce or intimidate the injured employee from filing and pursuing his FELA action." *Id.* at 293. The court disagreed, finding nothing in the legislative history to support the plaintiff's reasoning, and noted "[t]he same argument could be advanced against the admissibility of a counterclaim in any tort action." *Id.* at 294.

¶ 26    The dissenting judge contended that the majority construed sections 55 and 60 too narrowly and that allowing "the railroads' counterclaim to proceed would pervert the letter and spirit of

the FELA and would destroy the FELA as a viable remedy for injured railroad workers." *Id.* at 296 (Hall, J., dissenting). The dissent believed the railroads' counterclaim was a " 'device' calculated to intimidate and exert economic pressure upon [the plaintiff], to curtail and chill his rights, and ultimately to exempt railroads from liability under the FELA." *Id.*

¶ 27    In *Sprague*, 769 F.2d at 27, the plaintiff train engineer sued the railroad under the FELA for injuries he suffered when the locomotive he was operating collided with a train. The railroad filed a counterclaim for damages to the vehicles involved in the accident. *Id.*

¶ 28    On appeal, the plaintiff argued the railroad's counterclaim should have been dismissed because Congress implicitly rescinded an employer's right to sue its employees for property damage. *Id.* at 28. The First Circuit found the reasoning in *Cavanaugh* persuasive and agreed with its analysis. *Id.* at 29.

¶ 29    In *Nordgren*, 101 F.3d at 1247, the plaintiff train conductor filed an FELA suit seeking damages for personal injuries allegedly caused by the railroad's negligence. The railroad sought to file a counterclaim to recover property damage sustained in the train collision but was denied the opportunity to do so. *Id.*

¶ 30    On appeal, the Eighth Circuit considered whether the FELA precluded a railroad from counterclaiming for property damages. *Id.* at 1248. The court noted the United States Supreme Court "has recognized FELA as a broad remedial statute and has construed FELA liberally in order to accomplish Congress's goals." *Id.* at 1249. The plaintiff argued the word "device" in section 55 encompassed a state-law based counterclaim for property damages, which precluded the railroad's counterclaim. *Id.* at 1250. After acknowledging the rulings in *Sprague* and *Cavanaugh*, the Eighth Circuit found the phrase "any device whatsoever" was informed by its preceding terms of "contract," "rule," and "regulation." *Id.* at 1250-51. The court stated the latter terms related to "legal instruments" that railroads had used prior to the enactment of the FELA to exempt themselves from liability and " 'any device whatsoever' refers only to any other creative agreements or arrangements the railroad might come up with to exempt itself from liability." *Id.* at 1251. Moreover, finding that "only when something exempts the railroad from FELA liability can it be a device," the court concluded a counterclaim does not constitute a "device" under section 55 because it does not exempt the railroad from FELA liability. *Id.* While the court acknowledged the plaintiff's concerns about counterclaims frustrating the purpose of the FELA, it stated "Congress's silence on this issue speaks volumes." *Id.* at 1253.

¶ 31    The dissenting judge believed the railroad's counterclaims were "devices" under sections 55 and 60 of the FELA. *Id.* (McMillian, J., dissenting). Relying on a 1985 law review article, the dissenting judge concluded the counterclaims would frustrate the remedial purpose of the FELA and could inhibit coworkers of the injured employee from volunteering information pertinent to an FELA action. *Id.* at 1255-58 (citing William P. Murphy, *Sidetracking the FELA: The Railroads' Property Damage Claims*, 69 Minn. L. Rev. 349 (1985)).

¶ 32    In *Withhart*, 431 F.3d at 841, the plaintiff was an employee on a maritime vessel and was injured at sea as a result of a collision. The plaintiff filed a complaint under the Jones Act (46 U.S.C. app. § 688 (2000)), and the shipowner filed a negligence counterclaim against him for property damage. *Withhart*, 431 F.3d at 841. The district court dismissed the counterclaim. *Id.*

¶ 33    The Fourth Circuit noted that Congress created a negligence cause of action for ship personnel against the employers when it passed the Jones Act and it extended to seamen "the

same rights granted to railway employees by FELA." *Id.* at 843. Thus, the court found interpretations of the FELA were instructive in Jones Act cases. *Id.*

¶ 34    The plaintiff argued Congress implicitly rescinded an employer's common-law right to sue its employees under the FELA and the Jones Act. *Id.* However, the Fifth Circuit disagreed, finding the rulings in *Cavanaugh*, *Sprague*, and *Nordgren* to be persuasive. *Id.* Thus, the court held "no statutory provision in the FELA, and consequently, in the Jones Act, prohibits a shipowner-employer from pursuing a claim against its negligent seaman-employee for property damage." *Id.* at 845.

¶ 35    In contrast to the rulings in the previous four cases, plaintiffs rely on the Seventh Circuit's decision in *Deering*. There, the plaintiff riverboat pilot sued the defendant employer under the Jones Act for injuries he sustained in an accident on the Mississippi River. *Deering*, 627 F.3d at 1040. The defendant filed a counterclaim for damages the plaintiff allegedly caused to the boat, but the district court dismissed it as in the nature of a setoff and prohibited by the Jones Act. *Id.*

¶ 36    The court of appeals in that case noted "a suit or counterclaim by a shipowner against a seaman is a setoff against the seaman's personal injury claim; the question is whether such a setoff is permissible." *Id.* at 1043. In looking at the language of section 55 of the FELA, the court found the defendant's counterclaim for setoff constituted a "device" and thus was prohibited. *Id.* However, the court acknowledged that the issue presented in this case was not before it and, not wanting to create a conflict with the Fifth Circuit in *Withhart*, stated it would "leave for a future day" whether property damage claims by an employer should be permitted in an employee's personal injury case under the FELA. *Id.* at 1048.

¶ 37    After considering the opinions of the five federal courts of appeal, we find better reasoned those four that found counterclaims are not prohibited under sections 55 and 60 of the FELA. First, nothing in the FELA suggests it was intended to abrogate an employer's common-law right to assert claims against its workers who negligently caused damage to company property. *Nordgren*, 101 F.3d at 1252-53; *Cavanaugh*, 729 F.2d at 290-91.

¶ 38    Second, the plain language of section 55 of the FELA does not evince an intent by Congress to prohibit an employer's counterclaims. Section 55 provides "[a]ny contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void." 45 U.S.C. § 55 (2012). The parties agree the Seventh Circuit's statements on section 55 amount to judicial *dictum*, which is "an expression of opinion upon a point in a case argued by counsel and deliberately passed upon by the court, though not essential to the disposition of the cause." *Cates v. Cates*, 156 Ill. 2d 76, 80 (1993). "[A] judicial *dictum* is entitled to much weight, and should be followed unless found to be erroneous." *Id.* We find the Seventh Circuit's reasoning unpersuasive.

¶ 39    The Seventh Circuit found "device" similar to the word "contract" and stated a counterclaim had the same effect as a provision in an employment contract where the employee waives the employer's liability. *Deering*, 627 F.3d at 1044. However, a counterclaim does not equate to a contract, rule, or regulation. A counterclaim does not create rights between the parties but is an independent cause of action seeking to assert rights against another. See *Wilson v. Tromly*, 404 Ill. 307, 309-10 (1949) ("A counterclaim is an independent cause of action.").

Unlike a contract, rule, or regulation that can be rendered "void," a counterclaim, while subject to dismissal, would not suffer the same fate as being void.

¶ 40    The Seventh Circuit also dismissed the doctrine of *ejusdem generis*, which states that, "when a statutory clause specifically describes several classes of persons or things and then includes 'other persons or things,' the word 'other' is interpreted to mean 'other such like.' " *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 492 (2009) (quoting *People v. Davis*, 199 Ill. 2d 130, 138 (2002)); see also *Bullman v. City of Chicago*, 367 Ill. 217, 226 (1937) (utilizing the doctrine of *ejusdem generis* to construe the words " 'junk, rags,' " and " 'any second-hand article whatsoever' " to mean that the general words "any second-hand article whatsoever" include "only things of the same kind as those indicated by the preceding particular and specific words"). Here, we find the words "or device whatsoever" are to be interpreted like "contract," "rule," and "regulation," the latter three referring to legal instruments that an employer could use to escape liability. *Nordgren*, 101 F.3d at 1251.

¶ 41    The words "or device whatsoever" are also defined by the phrase that follows: "the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability." 45 U.S.C. § 55 (2012). Unlike a contractual agreement or a release, a counterclaim does not extinguish a plaintiff's FELA cause of action or exempt the railroad employer from liability. *Nordgren*, 101 F.3d at 1251; *Cavanaugh*, 729 F.2d at 292. Here, Wisconsin Central could still be found liable to plaintiffs in their FELA claims. Thus, we find the specific language of section 55 does not encompass counterclaims filed by an employer against its allegedly negligent employees.

¶ 42    We also find counterclaims are not prohibited by section 60 of the FELA, which voids "[a]ny contract, rule, regulation, or device whatsoever, the purpose, intent, or effect of which shall be to prevent employees of any common carrier from furnishing voluntarily information to a person in interest as to the facts incident to the injury or death of any employee." 45 U.S.C. § 60 (2012). The court in *Deering* did not discuss section 60. The Fourth Circuit in *Cavanaugh* noted section 60 was intended to keep the railroad from preventing other employees from providing information to the injured employee in the latter's lawsuit against the railroad. *Cavanaugh*, 729 F.2d at 293. We fail to see how a counterclaim against an allegedly negligent employee would prevent other employees from stepping forward to provide relevant information. Instead, like section 55, section 60 prohibits railroad employers from thwarting an employee's ability to provide information by way of "contract, rule, regulation or device whatsoever," and a counterclaim has no such muzzling effect on those employees.

¶ 43    Third, we note there are several cases that fall on both sides of the issue. For example, in 1980, the Washington Supreme Court held the railroad's counterclaim violated sections 55 and 60 of the FELA because the counterclaim had the potential to discourage employees from filing FELA actions or providing information as to facts relating to an employee's injury or death. *Stack*, 615 P.2d at 460-61; see also *Blanchard v. Union Pacific R.R. Co.*, No. 15-0689-DRH, 2016 WL 411019, at *2 (S.D. Ill. Feb. 2, 2016) (finding *Deering* instructive and dismissing the railroad's counterclaim). In contrast, a federal district court recently followed the "majority view" in adopting the reasoning set forth in *Withhart*, *Nordgren*, *Sprague*, and *Cavanaugh* and concluded counterclaims are not a "device" under section 55 of the FELA. *Norfolk Southern Ry. Co. v. Tobergte*, No. 5:18-cv-207-KKC, 2018 WL 6492606, at *3 (E.D. Ky. Dec. 10, 2018).

¶ 44    *Cavanaugh* was decided in 1984, and since that time, three federal courts of appeal have followed its reasoning, and only one, in *dictum*, has disagreed. Congress, however, has not stepped in to amend sections 55 and 60 of the FELA to specifically prohibit an employer's counterclaims. Considering the arguments and case law on both sides of the issue throughout the years, we find such silence telling. See *Hilton v. South Carolina Public Rys. Comm'n*, 502 U.S. 197, 202 (1991) (stating Congress had had almost 30 years to correct the Supreme Court's decision if it disagreed with it and, because it had chosen not to do so, the Court accorded weight to Congress's continued acceptance of its earlier holding). Given the employer's long-standing right to sue its employees for negligence and considering the plain language of the statute, the federal court decisions, and Congress's silence, we hold sections 55 and 60 of the FELA do not prohibit a railroad employer from filing a counterclaim for property damages against its employees.

¶ 45                                             CONCLUSION

¶ 46    We reverse the judgment of the appellate court that upheld the circuit court's dismissal of Wisconsin Central's counterclaims and remand to the circuit court for further proceedings.

¶ 47    Judgments reversed.

¶ 48    Cause remanded.

¶ 49    JUSTICE KILBRIDE, dissenting:

¶ 50    As the majority explains, the federal courts are split on their interpretation of the Federal Employers' Liability Act (FELA) (45 U.S.C. § 51 *et seq.* (2012)) as it applies to the circumstances presented by this case. We must, therefore, review the federal decisions and follow those we consider better reasoned. Contrary to the majority, I believe the better reasoned decisions hold that the FELA prohibits counterclaims by railroads against their workers for damages to railroad property. The alternative interpretation adopted by the majority defeats the purpose of the FELA to provide a remedy for railroad workers injured as a result of the railroad's negligence. Accordingly, I respectfully dissent.

¶ 51    The majority reviews the federal court of appeals decisions weighing on this issue. In my view, the Seventh Circuit's opinion in *Deering v. National Maintenance & Repair, Inc.*, 627 F.3d 1039, 1041 (7th Cir. 2010), is persuasive. In that case, a riverboat pilot suffered career-ending injuries when the towboat he was operating was swamped and sank in the Mississippi River. The plaintiff filed a claim for personal injuries under the Jones Act (46 U.S.C. § 30101 *et seq.* (2006)), the admiralty counterpart to the FELA. *Deering*, 627 F.3d at 1041. The employer responded by filing a counterclaim for damages it alleged the plaintiff caused to the towboat. The district court granted the plaintiff's motion to dismiss the employer's counterclaim, holding it was in the nature of a setoff to the plaintiff's Jones Act claim. *Deering*, 627 F.3d at 1041-42. In affirming, the Seventh Circuit observed that

> "shipowners, unless they are trying to reduce or eliminate their liability for personal injuries caused by their negligence, do not sue their employees for property damage except in the very rare case in which the employee is so highly paid as to be worth suing. In the case of seamen, even if they are riverboat pilots rather than just deckhands, such suits are unknown—unless, as in this case, the seaman is seeking damages from

the employer. As a practical matter, then, a suit or counterclaim by a shipowner against a seaman is a setoff against the seaman's personal injury claim." *Deering*, 627 F.3d at 1043.

¶ 52 The Seventh Circuit observed that the FELA is incorporated by reference into the Jones Act and determined that setoffs are not permitted under section 55 of the FELA, prohibiting " '[a]ny contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter.' " *Deering*, 627 F.3d at 1043 (quoting 45 U.S.C. § 55 (2006)). The employer's counterclaim for damages to the towboat was properly described as a device intended to enable the employer to exempt itself from liability because that was the only purpose of the counterclaim in those circumstances. *Deering*, 627 F.3d at 1043. The Seventh Circuit concluded that the phrase "any device whatsoever" should be construed broadly as a catchall given Congress's intent to provide a remedy for injured employees. *Deering*, 627 F.3d at 1044.

¶ 53 Similarly, in *Stack v. Chicago, Milwaukee, St. Paul & Pacific R.R. Co.*, 615 P.2d 457, 461 (Wash. 1980) (*en banc*), the Washington Supreme Court held a railroad's counterclaim for $1.5 million in property damage was barred by the FELA. The court concluded that the remedial purpose of the FELA supported a broad interpretation of the term "device." *Stack*, 615 P.2d at 460. More recently, in *Blanchard v. Union Pacific R.R. Co.*, No. 15-0689-DRH, 2016 WL 411019 (S.D. Ill. Feb. 2, 2016), the federal district court granted an FELA plaintiff's motion to dismiss a counterclaim for property damage filed by a railroad, holding the counterclaim violated the public policy reflected in the FELA. The district court found the counterclaim was a device calculated to intimidate and exert economic pressure on the plaintiff, to curtail his rights, and ultimately to exempt the railroad from liability under the FELA. *Blanchard*, 2016 WL 411019, at *3; see also *Yoch v. Burlington Northern R.R. Co.*, 608 F. Supp. 597, 598 (D. Colo. 1985) (concluding "the more realistic and less legalistic view" is that the railroad's $5 million property damage counterclaim is a "device" within the meaning of the FELA).

¶ 54 In my view, *Deering*, *Stack*, *Blanchard*, and *Yoch* are better reasoned decisions because they effectuate the purpose and intent of the FELA to provide a remedy for injured railroad workers. While the majority engages in a technical construction of the statutory language, we must keep in mind that " 'statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning.' " *Corbett v. County of Lake*, 2017 IL 121536, ¶ 28 (quoting *Cabell v. Markham*, 148 F.2d 737, 739 (2d Cir. 1945)). The purpose of the FELA is to provide compensation for injured railroad workers by imposing liability upon railroads for injuries resulting in whole or in part from the railroad's negligence. 45 U.S.C. § 51 (2012); *Kernan v. American Dredging Co.*, 355 U.S. 426, 432 (1958). In *Sinkler v. Missouri Pacific R.R. Co.*, 356 U.S. 326, 329 (1958), the United States Supreme Court stated that the FELA

"was a response to the special needs of railroad workers who are daily exposed to the risks inherent in railroad work and are helpless to provide adequately for their own safety. [Citation.] The cost of human injury, an inescapable expense of railroading, must be borne by someone, and the FELA seeks to adjust that expense equitably between the worker and the carrier. [Citation.]"

¶ 55     The FELA provides injured railroad workers with their exclusive remedy for injuries sustained as a result of their employer's negligence (*New York Central R.R. Co. v. Winfield*, 244 U.S. 147, 151-52 (1917)), and "it is clear that the general congressional intent was to provide liberal recovery for injured workers" (*Kernan*, 355 U.S. at 432). The statute has, therefore, been construed liberally to accomplish its important remedial and humanitarian purpose. *Urie v. Thompson*, 337 U.S. 163, 180 (1949). Indeed, the Supreme Court has stated "[t]he coverage of the statute is defined in broad language, which has been construed even more broadly." *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 561-62 (1987).

¶ 56     In my view, the analysis in *Deering* correctly effectuates the FELA's important remedial and humanitarian purpose by construing its broad language liberally. Here, as in *Deering*, Wisconsin Central would have no incentive to sue plaintiffs for damage to its property if plaintiffs were not seeking damages for their personal injuries. A setoff for damages to the railroad's property in these circumstances defeats the purpose of the FELA to provide a remedy for injured railroad workers. The practical effect is the same as if the railroad had exempted itself from liability by a contract, rule, or regulation. Wisconsin Central's counterclaim seeks more than $1 million in damages to two trains and railroad tracks and reimbursement for environmental cleanup. It is not difficult to imagine a large award, given the potential cost of the damaged property. Those damages will almost certainly eliminate any recovery by plaintiffs for their personal injuries. The majority's interpretation of the FELA allowing the railroad to exempt itself from liability through a setoff defeats Congress's intent to compensate railroad workers for injuries caused negligently by their employer. Consistent with the FELA's purpose, I believe the phrase "any device whatsoever" should be construed broadly as a catchall to prohibit railroads from filing counterclaims for damage to railroad property and thereby exempting themselves from liability for a railroad worker's personal injuries.

¶ 57     In sum, I would affirm the circuit and appellate court decisions dismissing Wisconsin Central's counterclaim in this case. As the appellate court held, prohibiting the counterclaim "is the interpretation most consistent with the FELA's overarching goal of providing a remedy to employees injured while participating in this dangerous occupation." 2018 IL App (1st) 172648, ¶ 21. I believe the majority's technical reading of section 55 of the FELA defeats the statute's purpose and undermines the congressional intent to provide a remedy for workers injured as a result of a railroad's negligence. Accordingly, I respectfully dissent from the majority's decision allowing Wisconsin Central to pursue its counterclaim for damages to railroad property.

¶ 58     JUSTICE NEVILLE joins in this dissent.


¶ 59                    **SEPARATE OPINION UPON DENIAL OF REHEARING**

¶ 60     JUSTICE KILBRIDE, dissenting:

¶ 61     For the reasons I stated above, I dissent from the denial of plaintiff's petition for rehearing.


¶ 62     JUSTICE NEVILLE joins in this dissent.